## Mount Oliver Ballots.

*Election law — Primary election — Fraud—Irregularities—Voters not on registry list—Democrats voting Republican ballots—Effect on ballot of assistance without affidavit—Recount.*

1. The vote of an election precinct should not be declared null and void unless fraud is shown.

2. Irregularities without fraud will not justify disfranchisement of a whole district.

3. Where the returns showed 145 ballots and check list showed 131 voters checked, in the absence of evidence, it is as reasonable to assume that the inspector failed to check the names as that the election board allowed persons not on the registry list to vote.

4. A vote cast by a son, who was not registered, upon his father's name is illegal, and should not be counted by the returning board.

5. At a primary election, a vote cast by one on age, his name not being on the registry list, is illegal, and must be thrown out.

6. Votes of registered Democrats who voted Republican ballots, although the candidates were identical, were unlawful, and were ordered not counted.

7. Where there is no evidence of the identity of the alleged illegal voters or how they voted, the error of the election officers in receiving their ballots cannot be corrected by the court.

Petition for recount. C. P. Allegheny Co., Oct. T., 1925, No. 2826.

*George P. Kountz*, for appellants.

EVANS, J., Oct. 5, 1925.—On Sept. 19, 1925, ten qualified electors of the first precinct of the Borough of Mount Oliver presented their petition to the Court of Common Pleas of this county, praying that the county commissioners, in their capacity as returning board for the primary election held on Sept. 15th, take possession of the ballot-box of said district and recount the votes therein, and the court ordered the recount.

On Sept. 24th a petition was presented to this court, asking for an appeal from the action of the county commissioners in the recount of the ballots. On the hearing of that appeal there were several errors developed in the holding of the primary. The majority inspector testified that she was not able to get

Mount Oliver Ballots.

a clerk, that she had tried to get two people to serve and they both refused. The papers returned show that one of these two men, a man by the name of Young, had refused to serve as a clerk, but his name was included in the oath they administered to the election officers and his signature was to that oath. He denied having signed the oath or that an oath was administered to him.

Now, whatever may be the offence committed by the person who inserted his name in the oath or who signed his name to it, I am unable to see in what way that affected the conduct of the election. That act was a nullity. The situation was just the same as though the oath of office had not appeared as bearing Young's name. There was no clerk of the majority inspector in that election, and I cannot see how that would void the election. There does not appear to be any purpose in not having a clerk, because the uncontradicted evidence is that an attempt was made to get a clerk by the majority inspector, and there was none there because she was unable to get one.

There were two persons voted who were not on the registry list or on the voters' check list. John C. McNamara appeared and got a Republican ticket and voted. His name was not on the voters' check list or on the registry. Thomas McNamara, his father, was on both these lists and the list was checked as his voting, although he did not vote. This vote was illegal, but of itself I do not see how it could be said to be fraudulent. It was an easy mistake to make with McNamara coming and asking for a ballot and McNamara being there, the inspector thinking that was the man in giving him a ballot or at checking the other man as voted. A young man by the name of Lechner was not on the registry list and not on the ballot check list, and he was allowed to vote. He testified that he had just become of age and believed that he had a right to vote on age, as he stated, although he was not on the registry list. This, of course, was an error on the part of the board to permit him to vote, and it was an error which in my experience in examination of election returns, under circumstances such as this, that many election boards make, because in boroughs and townships at the general election the voter may vote on age if he can be vouched for, even if he is not on the registry list. It is a mistake which is quite frequently made by voters and by election officers. These are the only two instances in which there is any evidence that a voter not on the registry list was allowed to vote.

There were four Democrats who received and voted Republican ballots. That was an error, and their votes were illegal. There was a peculiar situation in this precinct. The candidates on the Democratic and Republican ballots were the same, and, while it was illegal for an enrolled Democrat to vote a Republican ballot, it is easy to assume that he did not know when he was voting for the same people that he was not voting in accordance to the law.

There were two women assisted unlawfully in the casting of their ballots. So far as the actual voting is concerned, the above is the only evidence of error or fraud which was produced at the hearing in this case.

There was no check list placed in the ballot-box, so far as the evidence shows. The ballot-box came to the election officers without a lock and it was delivered by the election officers unlocked. It was bound and sealed, and the evidence is that there was no breaking or disturbing of that binding and sealing from the time the ballot-box passed out of the election board's possession until the time it was delivered to the county commissioners. There is evidence from which we might find that there was no voters' list outside the polls and there was no check list deposited in the box. There was a voters' check list returned to the county commissioners.

### Mount Oliver Ballots.

The petitioners ask us to declare this election null and direct votes shown by the ballots returned be not counted. The question of declaring the vote of an election precinct null and void is a pretty serious matter, and, as I take it, should not be done unless fraud has been shown. In my own experience we have thrown out the vote of but one election precinct, and that pretended election was so permeated with fraud, there being evidence that many ballots had been placed in the ballot-boxes that were not voted, and that many persons were returned on the voters' check list as having voted, but had not voted; there was evidence that the voters' check list that was returned was made up after the polls had closed, that being shown by the fact that, according to the check list as returned, electors had cast their votes in alphabetical order; that the whole pretended election was so permeated by fraud that it could not be sustained. There is no such situation here.

There is only one serious question presented to me at the hearing in this case. There were 145 ballots returned as having been voted. The voters' check list returned to the county commissioners show 131 electors checked, making a difference of 14 ballots, the voters of which had not been checked on the voters' check list. Taking the young man who voted on age, leaves thirteen unaccounted for. There is no explanation, and no pretended explanation. There is no evidence outside the two I have cited that anybody was allowed to vote whose name was not on the registry list and the voters' check list as sent to the board by the county commissioners. It seems to me it is just as reasonable, and more so to assume, that the inspector who kept the voters' check list made the mistake in not checking the names of all the electors who voted as it is to assume that the board permitted thirteen people to vote at election whose names were not on the registry list and voters' check list.

An inspection of the voters' check list as returned to the county commissioners shows that the inspector who kept that book had made mistakes. The book shows erasures at the place where a check would have been placed. It is evident that the inspector had checked the name and afterwards discovered a mistake and erased it. A careful consideration of all the evidence produced in this case convinces me that there is no such situation as would justify the disfranchisement of the many honest voters who cast their vote at this primary. There were errors, and, so far as we are able to correct these errors, it is our duty to do so.

As I stated above, there were eight people voted who had no right to vote in the way they did and whose votes were illegal.

Gerald J. Kitrich voted a Republican ticket. He claimed to be a Republican, but was enrolled as a Democrat, and, therefore, the ballot that he cast was illegal. He voted for the following for council: Amman, Johnston, Keener and Troetschel.

Nellie A. McCullough was enrolled as a Democrat, voted a Republican ballot and did not remember how she had voted.

James McGinness was enrolled as a Democrat and voted a Rupublican ballot. He voted only for Evans for council.

Nora McGinness was a Democrat and voted a Republican ballot; voted only for Mrs. Simmons. Did not vote for any councilmen.

George Richtmeyer was enrolled as a Democrat. There does not appear to be any Democratic ballot voted. There is no evidence for whom he cast his ballot.

Two women whose names are not given were assisted by Louis R. Schmidt without having made the necessary affidavit to justify the election board in

Mount Oliver Ballots.

giving them assistance. Schmidt was on the witness-stand to testify to this fact. He was not asked what their names were, nor was he asked if he knew how they voted, and we have no evidence as to who they were or how they voted. So far as we can correct these errors, it is our duty to do so. So far as the evidence is not sufficient to correct the errors, we are not able to do so.

As I have stated above, I am of the opinion that there is not sufficient evidence here to justify throwing out the vote of this precinct. This is not an election contest. The only purpose of an appeal to the court is to discover and correct error and fraud, and if we find sufficient fraud to justify, as I stated we did in the one case, it is our duty to throw out the vote in that precinct, but there is no such evidence in this case.

And now, Oct. 5, 1925, after hearing the evidence in the above entitled case and consideration of same and the argument of counsel, we find the ballots cast by the following electors who voted at the primary election in the first precinct of the Borough of Mount Oliver on Sept. 15, 1925, were illegal, and that the votes cast by them for the persons named in this order should not be counted by the returning board:

John C. McNamara voted for the following councilmen: William Frederick Amman, Christ Evans, John E. Keener and Bernard J. Johnston.

Gerald J. Kitrich voted for Christ Evans, William Frederick Amman and John E. Keener.

James McGinness voted for Christ Evans.

Nora McGinness voted for Mrs. Simmons.

Gilbert J. Lechner voted for Amman, Johnston, Keener and Troeschel.

The above votes were all illegal and should not be counted for the persons for whom they were cast.        From William J. Aiken, Pittsburgh, Pa.